838 P.2d 1283

The ESTATE OF Ruben A. HERNANDEZ, by Elizabeth L. HERNANDEZ–WHEELER, his personal representative, for and on Behalf of Ruben R. HERNANDEZ, Elizabeth L. Hernandez–Wheeler, and Catherine Rose Poli, Plaintiff/Appellant,

v.

ARIZONA BOARD OF REGENTS, a body corporate, Delta Tau Delta Fraternity, a New York corporation, Epsilon Epsilon Chapter of Delta Tau Delta Fraternity, Inc., an Arizona corporation, Epsilon Epsilon Educational Foundation, an Arizona corporation, Brett Harper Anderson, Bradley Reed Bergamo, Paul Jude Biondolillo, Joshua Christopher Bliss, Matthew James Bosco, Steven Penn Bryan, Anthony Charles P. Caputo, Thomas David Carlson, Stephen Michael Carpenter, Jeffrey David Catlin, Nathaniel Louis Derby, Albert Edward Dietrich IV, Clo Earl Edgington, Karam Elias Farah, Christopher Todd Flavio, Gerritt Andrew Gehan, Barry James Ginch, Steven Hare, David James Henshall, Markus Rudolph Holtby, Mark Thomas Hopkins, David Laurence Ison, Douglas Edward Jameson, Gregory Richard Janis, Rex Edward Jorgensen, Jay Adam Josephs, Craig Landon, Sean David Leahy, Dale R. Lemon, John Christopher Manross,

---

John Conrad Miller, Christopher J. Molloy, Harrison Lane Morton, Kurt Richard Munzinger, Paige Ray Peterson, Kenneth S. Plache, Daniel Lee Rasmus, Scott Allen Remington, Paul Anthony Reynolds, James Samuel Rigberg, Gary Edward Rink, Erick Jon Roberts, Michael Daniel Roth, George Evangelos Roussos, Charles Dana Sacks, Thomas McKinlay Schwarze, William John Sheoris, Douglas Todd Sims, Clifford Lawrence Smith, Kristopher James Stathakis, Roger Sanford Stinnett, Douglas Matthew Stoss, Anthony Charles Suriano, Eric Joseph Szoke, Nelson Sterlin Udstuen, James Frank Uppendahl, Scott Urban, Larry Wagner, Todd Eric Wallis, Jonathan Blakeslee Woodard, Michael Patrick Woodward, Jeffrey Ryan Wyne, and David Hall Yohe, Defendants/Appellees.

Nos. 2 CA–CV 90–0191, 2 CA–CV 90–0219, 2 CA–CV 90–0252 and 2 CA–CV 90–0257.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 29, 1991.

Review Granted on Issues 1, 2, 5, and 6, and Denied on all other Issues Nov. 3, 1992.

Risner & Graham by Kenneth K. Graham and William J. Risner, Tucson, for plaintiff/appellant.

Grant Woods, Atty. Gen. by Bruce J. MacDonald and Nancy M. Coomer, Tucson, for defendants/appellees Arizona Board of Regents and Steven Hare.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by Samuel D. Alfred, Tucson, for defendant/appellee Delta Tau Delta Fraternity.

Murphy, Goering, Roberts & Berkman, P.C. by Michael F. McNamara and William L. Rubin, Tucson, for defendants/appellees Epsilon Epsilon Chapter of Delta Tau Delta Fraternity, Epsilon Epsilon Educational Foundation and Certain Individuals.

Ridenour, Swenson, Cleere & Evans by Harold H. Swenson, Richard H. Oplinger, and Robert R. Byrne, Phoenix, for defendants/appellees Douglas Matthew Stoss and John Christopher Manross.

Law Offices of Kevin E. Miniat by Kevin E. Miniat, Tucson, for defendant/appellee James Frank Uppendahl.

## OPINION

FERNANDEZ, Judge.

This case presents the issues of the validity of A.R.S. § 4–312(B) and the potential liability of members of a University of Arizona fraternity, the local fraternity chapter, its house corporation, the national fraternity, and the Arizona Board of Regents for the serious injury and subsequent death of a motorist involved in a collision with an

underage, intoxicated fraternity member who had recently driven away from a fraternity party. The trial court granted summary judgment in favor of appellees, and the personal representative of the deceased motorist's estate appeals. We affirm.

Because the case was decided on summary judgment, we view the facts in the light most favorable to the personal representative, the party opposing the motions. *Gulf Insurance Co. v. Grisham*, 126 Ariz. 123, 613 P.2d 283 (1980). On August 27, 1988, appellee Epsilon Epsilon Chapter of Delta Tau Delta Fraternity, Inc. (Epsilon Epsilon) at the University of Arizona held a bid party to welcome pledges who had been through "Rush Week" and had agreed as of 6:00 p.m. that evening to join Epsilon Epsilon.

Approximately 63% of the members of the fraternity that fall semester were under the age of 21, the legal drinking age in Arizona. A.R.S. § 4–101(16). The fraternity kept records of its members' birth dates. All members, regardless of age, could contribute to a fund maintained by the social fund chair. The chair, a member over 21, kept the members' contributions in a separate checking account outside the normal operation of the fraternity's treasury and used the money to purchase alcohol to be served at fraternity parties. For the fall semester 1988, each member who contributed to the fund paid $80. All members who contributed to the fund, regardless of their ages, were entitled to drink the purchased alcohol at fraternity parties; they were not permitted to take their own alcohol.

Extensive discovery was conducted in this case. The evidence was that the fraternity purchased between six and eight kegs of beer for the party on August 27. It owned the equipment to have four kegs operating at the same time. A member testified that the fraternity generally began its parties with four kegs operating and then served from two kegs at a time the rest of the evening. Several hundred people generally attended the fraternity's parties, most of them underaged females.

On August 27, John Rayner, a fraternity member, was twenty years, five and one-half months old. He attended the party and was seen drinking there. The party ended at 1:00 a.m. At 1:45 a.m., Rayner's vehicle crashed into a vehicle driven by Ruben Hernandez. Rayner was traveling at least 43 miles per hour in a 25 mile-per-hour zone. His blood alcohol level at 2:30 a.m. was .15 per cent. Hernandez was rendered blind, brain-damaged, and quadriplegic. He died in July 1990.

Hernandez sued Rayner for his injuries, and Hernandez's three adult children sued for their loss of consortium. The complaint was later amended to add as defendants each member of the fraternity who had contributed to the social fund that fall semester; Epsilon Epsilon; Epsilon Epsilon Educational Foundation, the corporation formed to lease the property on which the fraternity house is located; Delta Tau Delta Fraternity, the national fraternity organization; the Arizona Board of Regents; and Steven Hare, a university student assigned to Epsilon Epsilon pursuant to a university program aimed at reducing alcohol problems among fraternities and sororities. After Hernandez's death, his personal representative was substituted as plaintiff. Rayner settled with the estate and has been dismissed from the suit.

### THE COMPLAINT ALLEGATIONS

The complaint alleged that the individual fraternity members and Epsilon Epsilon were joint venturers who furnished or aided or abetted the furnishing of alcohol to those under the age of 21 either by contributing to the social fund or by serving alcoholic beverages at the party on August 27. Epsilon Epsilon was also alleged to be responsible under the doctrine of respondeat superior and for breach of its duty to control the activities of its members.

The national fraternity is alleged to have breached its duty to supervise the local chapter so as to assure its compliance with university rules and regulations. It is also alleged to be liable under the doctrine of respondeat superior for the negligent conduct of the local chapter adviser, who is

alleged to be an agent of the national organization.

Epsilon Epsilon Educational Foundation (the house corporation) leases the fraternity house property from its owner, the Arizona Board of Regents. The house corporation was established to constitute a continuing entity for leasing the property because the Board of Regents will not lease directly to transient fraternity members. The house corporation is alleged to have breached its duty to use reasonable care in entrusting its property to the chapter because it knew or should have known that the site was regularly used for fraternity parties at which alcohol was served to those under the legal drinking age.

The Board of Regents is alleged to have been negligent in continuing to lease the premises to the house corporation when it knew that the fraternity served alcoholic beverages to persons under the legal drinking age. Steven Hare is alleged to have gratuitously undertaken the responsibility to educate the members of Epsilon Epsilon on university regulations about the consumption of alcohol, to monitor the chapter's compliance with those regulations, and to report any violations of those regulations. The complaint alleges that he failed to exercise reasonable care in carrying out that undertaking. Hare is also alleged to have acted as an agent of the Board of Regents, and the Board is alleged to be liable both under the doctrine of respondeat superior and for its negligent supervision of Hare.

The basis for appellant's allegations against Hare is the following: In January 1987 a Greek Relationship Statement was approved by the university, which recognized that the fraternity/sorority system is an integral part of the institution's entire educational program. The statement notes that the university employs a professional staff member who is responsible for the administration of university policies relating to fraternity/sorority activities. The statement also requires all chapters to comply with all "federal, state and local laws, and University of Arizona regulations, guidelines and procedures concerning student and student organizations conduct." One of the items on which local chapters are required to have educational policies is alcohol use.

In the spring of 1988, meetings were held for the purpose of creating an organization entitled "University of Arizona Greeks Advocating Mature Management of Alcohol" (GAMMA). The purposes of GAMMA were stated to be:

A. To provide continuous education regarding Greek social functions.

B. To aid planning of social functions.

C. To regulate Greek events where alcohol is involved.

D. To increase awareness and allow the Greek system to take responsibility for it's [sic] own actions.

The members of GAMMA are fraternity and sorority members who are full-time students classified as sophomores or higher with a good grade point average. GAMMA has two co-chairs and one member for each two fraternity or sorority organizations. Each GAMMA member is assigned to a specific fraternity or sorority. Among his or her responsibilities is assisting in the planning of all alcohol-related events sponsored by the chapter, educating the chapter about university alcohol regulations and state laws on alcohol, and reporting alleged violations to GAMMA. GAMMA's bylaws expressly provide that the fraternity and sorority chapters retain sole responsibility for obtaining proof of legal drinking age at their functions.

At the beginning of rush activities in fall 1988, an assembly was held for all those participating in rush. At that assembly, at least two speakers talked about alcohol issues and the rules and laws applicable to fraternities and sororities. Steven Hare was the GAMMA member assigned to Epsilon Epsilon during fall 1988. He is not a member of Epsilon Epsilon. He stated in an affidavit that he attended the bid party on August 27, 1988 for a time and that he saw no underage fraternity members drinking while he was there.

APPLICATION OF A.R.S. § 4–312(B)

In granting summary judgment to the individual fraternity members, the trial court found that they are immune from liability pursuant to A.R.S. § 4–312(B). Appellant contends that the court erred in granting judgment, arguing that § 4–312(B) does not apply to this case and, alternatively, if it does apply, that it is unconstitutional. Section 4–312 reads as follows:

**Liability limitation**

A. A licensee is not liable in damages to any consumer or purchaser of spirituous liquor over the legal drinking age who is injured or whose property is damaged, or to survivors of such a person, if the injury or damage is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor to that person. A licensee is not liable in damages to any other adult person who is injured or whose property is damaged, or to the survivors of such a person, who was present with the person who consumed the spirituous liquor at the time the spirituous liquor was consumed and who knew of the impaired condition of the person, if the injury or damage is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor.

B. Subject to the provisions of subsection A of this section and except as provided in § 4–311, a person, firm, corporation or licensee is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor.

The trial court found that § 4–312(B) renders a social host immune from liability to anyone injured or killed by reason of the serving of spirituous liquor to any person, regardless of age. The court also stated that it was bound by the decision of this court in *Kent v. Mar–Fran Enterprises, Inc.,* 49 Ariz.Adv.Rep. 61 (App. December 12, 1989), that § 4–312(B) is constitutional.

That case, however, held only that § 4–312(A) was constitutional; the opinion was subsequently redesignated a memorandum decision. Meanwhile, in April 1990 the supreme court ruled that § 4–312(A) is unconstitutional because it takes from the jury the questions of contributory negligence and assumption of risk. *Schwab v. Matley,* 164 Ariz. 421, 793 P.2d 1088 (1990). In light of that ruling, therefore, we must determine the constitutionality of subsection (B).

The court's specific ruling in *Schwab* cannot apply to subsection (B) because no issues of either contributory negligence or assumption of the risk could be involved in suits resulting in injury or damage to third persons. The only question then is whether subsection (B) is severable from subsection (A).

## SEVERABILITY

The rule on severability is that the remaining part of a statute will be held valid if it is " 'so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity....' " *Millett v. Frohmiller,* 66 Ariz. 339, 342, 188 P.2d 457, 460 (1948), quoting 59 C.J. *Statutes* § 206.

Appellant contends that the subsections are not severable because (B) refers to (A), citing *Industrial Commission v. C & D Pipeline,* 125 Ariz. 64, 607 P.2d 383 (App.1979). The mere fact, however, that (B) refers to (A) does not render (B) a dependent provision of (A). Nor is the language of (B) so inextricably intertwined with the provisions of (A) that it can be said with confidence that the legislature would not have enacted (B) if it had known that (A) was invalid. *Benjamin v. Arizona Department of Revenue,* 163 Ariz. 182, 786 P.2d 1033 (App.1989).

We conclude, therefore, that subsection (B) is severable from (A) and that the ruling in *Schwab* had no effect on (B). Our determination that (B) is severable from (A), however, does not settle the issue of whether (B) is constitutional. A determina-

tion of that issue requires further examination.

## RELATIONSHIP OF § 4–312(B) AND § 4–301

Section 4–312 is part of title 4, which is entitled "Alcoholic Beverages." Chapter 3 of title 4 is entitled "Civil Liability of Licensees and Other Persons." It is a short chapter consisting of only two articles, each of which contains only two sections.

Article 1 of chapter 3, entitled "Liability Limitation," includes § 4–301, which reads as follows:

**Liability limitation; social host**

A person other than a licensee or an employee of a licensee acting during the employer's working hours or in connection with such employment is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part by reason of the furnishing or serving of spirituous liquor to a person of the legal drinking age.

The second section of article 1 applies only to licensees, as does the first section of article 2. Section 312 is the second section of article 2.

As appellant notes, § 4–301 clearly provides immunity to a social host only if the person furnished or served alcohol is over 21. If that were the only statute before us, we might rule that there is no immunity for persons who furnish or serve alcohol to those under 21 because of the specificity of the statutory language. However, we cannot ignore the fact that the same Thirty-seventh Legislature that enacted § 4–301 in 1985 also enacted § 4–312 the very next year. By its express language, § 4–312(B) provides immunity to *anyone* who furnishes alcohol to another, regardless of age, who subsequently causes injury or death to a third person. Both statutes thus appear to address the same issue in different ways, and we must resolve the apparent conflict between them.

■ There are a number of applicable rules of statutory construction to guide us

in that endeavor. First, statutes are to be liberally construed "to effect their objects and to promote justice." A.R.S. § 1–211(B). We must construe a statute "in the context of related provisions and in light of its place in the statutory scheme." *City of Phoenix v. Superior Court*, 144 Ariz. 172, 176, 696 P.2d 724, 728 (App. 1985). When two statutes seemingly conflict, we must harmonize them if possible, "in the absence of a manifest legislative intent to the contrary." *Mead, Samuel & Co. v. Dyar*, 127 Ariz. 565, 568, 622 P.2d 512, 515 (App.1980). That effort to harmonize them requires us to find the legislative intent of both by examining "the words, context, subject matter, effects and consequences, reason, and spirit of the law." *Arnold Construction Co. v. Arizona Board of Regents*, 109 Ariz. 495, 498, 512 P.2d 1229, 1232 (1973). When we determine, however, that two statutes are "in irreconcilable conflict, the general rule is that the more recent one prevails." *Mead*, 127 Ariz. at 568, 622 P.2d at 515.

An examination of the issue of civil liability for the furnishing or serving of alcoholic beverages begins with the cases of *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983), and *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983). Prior to 1983, tavern owners were not liable for damages that resulted from the serving of liquor. In *Ontiveros*, the supreme court abolished that common law doctrine as to an intoxicated adult who left a tavern and injured a third person. It did the same in *Brannigan* as to intoxicated sixteen and seventeen-year-olds who left a tavern and crashed into a wall. Neither case addressed the issue of social host liability.

In April 1985, the legislature enacted § 4–301, presumably in response to those cases, to prevent the extension of such liability to social hosts. The act that included § 4–301 also amended A.R.S. § 4–244, which proscribes various acts related to the sale of spirituous liquors. That act was adopted as an emergency measure and became effective immediately. A week later, this court held that a social host was not liable to a third person who was injured

by an intoxicated guest, over the age of 21, who had been furnished alcohol by the social host. *Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (App.1985).

The act that includes § 4–312 was approved by the governor in May 1986. 1986 Ariz. Sess. Laws ch. 329. It contains only two sections, 4–311 and 4–312. Section 4–311 provides that a licensee is liable for personal injury, property damage, and/or wrongful death that results from the licensee's sale of liquor to an obviously intoxicated purchaser or to a person whom the licensee either knows is under 21 or from whom the licensee has failed to request proof of age.

If we were to interpret § 4–312(B) to apply only to licensees, as appellant contends we should, we would render the words "person, firm, [and] corporation" meaningless, thus violating the rules of statutory construction. *State v. Superior Court,* 113 Ariz. 248, 550 P.2d 626 (1976); *City of Phoenix v. Yates,* 69 Ariz. 68, 208 P.2d 1147 (1949). We would also ignore the apparent legislative intent to address the liability of both licensees and social hosts in a single section.

■ The only reasonable conclusion that we can reach from a review of the applicable statutes and the contemporaneous case law is that § 4–312(B) implicitly repealed § 4–301 by rendering it essentially redundant. Apparently the legislature, on an emergency basis, intended to provide for social host immunity at the same time that it amended the statute listing various liquor sale violations. By the next year, in a non-emergency measure, the legislature enacted a more thorough bill that enumerates specific areas of licensee liability and nonliability and that provides comprehensive immunity for social hosts, regardless of the age of the person served or furnished the alcohol.

Although we acknowledge our duty to harmonize statutes and to avoid finding that a more recent statute has implicitly repealed an earlier one, we must make such a finding when the two statutes "are so in conflict that they cannot stand together upon any reasonable construction."

*State ex rel. Purcell v. Superior Court,* 107 Ariz. 224, 227, 485 P.2d 549, 552 (1971). We note, however, that our conclusion is consistent with the spirit of both statutes. Although § 4–301 is thereby rendered redundant, the subject that it addresses is nevertheless encompassed within § 4–312(B). The implicit repeal, therefore, does not result in any drastic alteration of the law of § 4–301; instead, its scope is merely expanded to include underage persons within the social host immunity.

### VALIDITY OF § 4–312(B)

Appellant contends that if we construe § 4–312(B) to preclude appellees' liability, then the statute is unconstitutional for one of four reasons: it violates the constitutional prohibitions against abrogating a right of action to recover damages for injuries, it violates the equal protection clause, it violates the due process clause, or it violates the constitutional requirement that an act embrace a single subject.

*Abrogation of Right of Action for Damages*

The Arizona Constitution provides as follows:

No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person.

Ariz. Const. art. 2, § 31. Article 18, § 6 provides:

The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

Appellant argues that § 4–312(B) violates both provisions of the constitution because the legislature has effectively prohibited the bringing of a cause of action. We disagree.

■ Although there is case law indicating that those provisions can apply to causes of action that were created after the adoption of the constitution, *Boswell v. Phoenix Newspapers,* 152 Ariz. 9, 730 P.2d 186 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987); *Humana*

*Hospital Desert Valley v. Superior Court,* 154 Ariz. 396, 742 P.2d 1382 (App.1987), the most recent supreme court pronouncement is that the provisions apply only to actions recognized at common law at the time the constitution was adopted. *Bryant v. Continental Conveyor & Equipment Co.,* 156 Ariz. 193, 751 P.2d 509 (1988); *see also Sandbak v. Sandbak,* 166 Ariz. 21, 800 P.2d 8 (App.), *review denied* (1990). Appellant does not dispute the fact that no case in Arizona has ever held that a social host is liable for injuries suffered because of the furnishing or serving of alcohol to a guest, whether the guest is under the age of 21 or not.

We note, in any event, that one of the tenets used in determining the application of the constitutional provisions is that "the constitution prohibits legislative abrogation, but not legislative regulation, of a cause of action." *Boswell,* 152 Ariz. at 18, 730 P.2d at 195. Although we conclude that § 4–312(B) provides immunity to appellees for appellant's loss, thereby abrogating a cause of action, we note that appellant has recovered damages in his suit against John Rayner.

We conclude that § 4–312(B) does not violate the constitutional provisions against the abrogation of a cause of action.

*Violation of Equal Protection and Due Process Clauses*

■ Appellant next contends that § 4–312(B) violates both the equal protection and due process clauses of the Arizona Constitution. Ariz. Const. art. 2, §§ 13, 4. Arguing that the appropriate test for analyzing its equal protection claim is the strict scrutiny test because the right to bring and pursue a negligence cause of action is a fundamental right, *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984), appellant contends that there is no compelling state interest upon which the statute can be upheld. The national fraternity argues that only the rational basis test applies here. Appellant also argues that the statute violates the due process clause because it has no "substantial relation to any

goals sought to be obtained by the legislature."

Appellant's basic complaint is that nonlicensees are rendered immune from liability by the statute while licensees remain subject to liability in certain instances. We find no merit to that complaint. Social hosts have essentially always had immunity from liability as evidenced by the fact that no case in Arizona has ever held a social host liable. Moreover, distinctions between the responsibilities and obligations of licensees and nonlicensees are common in other areas without any contention that those distinctions violate the constitution.

As this court observed in *Keckonen v. Robles, supra,* there are at least four valid reasons why licensees may be held liable and not social hosts:

First, the commercial proprietor has a proprietary interest and profit motive and should be expected to exercise greater supervision than the non-commercial social setting. Second, the person in the business of selling and serving alcohol is usually better organized to control patrons and has the financial wherewithal to do so. Third, by virtue of experience a commercial proprietor is more familiar with his customers and their habits and capacities. Fourth, since the ratification of the Twenty-first Amendment to the United States Constitution virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature....

146 Ariz. at 270, 705 P.2d at 947.

Regardless of the test applied, we find that § 4–312(B) does not violate either the equal protection clause or the due process clause of the Arizona Constitution.

*Violation of Single Subject Requirement*

■ Finally, appellant argues that the statute is unconstitutional because it violates the single subject provision of the Arizona Constitution, which reads as follows:

Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject

shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title. Ariz. Const. art. 4, pt. 2, § 13. As appellant notes, that provision is designed to enable both legislators and the public to discern the subject of legislation from reading its title. *White v. Kaibab Road Improvement District,* 113 Ariz. 209, 550 P.2d 80 (1976).

The article in title 4 in which § 4–312(B) appears is entitled "Illegal Sale of Spirituous Liquor." When the article was enacted in 1986, the act bore the title "Liquor—Illegal Sale to Intoxicated Person or Minor—Civil Liability of Licensed Seller." 1986 Ariz. Sess. Laws ch. 329. Appellant argues, as a result, that § 4–312(B) cannot be construed to apply to nonlicensees. We disagree. "As a general rule, an act's title need not be a synopsis or a complete index of the act's provisions.... It is sufficient if it informs the reader of the subject matter of the legislation and of the interests that the legislation may affect in a general way." *Hoyle v. Superior Court,* 161 Ariz. 224, 230, 778 P.2d 259, 265 (App.1989) (citation omitted).

■ The general subject matter of the act in question is the regulation of alcoholic beverages. A provision in an act "which directly or indirectly relates to the subject of the title and ha[s] a natural connection therewith is properly included in the body of the act." *State v. Harold,* 74 Ariz. 210, 214, 246 P.2d 178, 180 (1952). The title here is sufficient to put the reader on notice of the general subject matter, and the statute bears a natural connection to that subject matter. We find no constitutional violation.

We conclude that § 4–312(B) is constitutional.

### DE FACTO LICENSEE

■ Appellant argues, alternatively, that § 4–312(B) does not apply to this lawsuit in any event, contending that the local fraternity is liable under Arizona liquor license laws because it illegally operated as a private club without first obtaining a license. The definitions section of the title on alcoholic beverages, A.R.S. § 4–101, provides as follows:

5. 'Club' includes any of the following organizations where the sale of spirituous liquor for consumption on the premises is made to members only:

\*    \*    \*    \*    \*    \*

(b) A chapter, aerie, parlor, lodge or other local unit of an American national fraternal organization which has as the owner, lessee or occupant operated an establishment for fraternal purposes in this state. An American national fraternal organization as used in this subdivision shall actively operate in not less than thirty-six states or have been in active continuous existence for not less than twenty years.

\*    \*    \*    \*    \*    \*

(e) A social club with more than one hundred bona fide members who are actual residents of the county in which it is located, which owns, maintains or operates club quarters, and which is authorized and incorporated to operate as a nonprofit club under the laws of this state, and has been continuously incorporated and operating for a period of not less than one year. The club shall have had, during such period of one year, a bona fide membership with regular meetings conducted at least once each month, and the membership shall be and shall have been actively engaged in carrying out the objects of the club. The club's membership shall consist of bona fide dues paying members paying at least six dollars per year, payable monthly, quarterly or annually, which have been recorded by the secretary of the club, and the members at the time of application for a club license shall be in good standing having for at least one full year paid dues. At least fifty-one per cent of the members shall have signified their intention to secure a social club license by personally signing a petition, on a form prescribed by the board, which shall also include the correct mailing address of each signer. The petition shall not have

been signed by a member at a date earlier than thirty days prior to the filing of the petition. The club shall qualify for exemption from the payment of state income taxes under the provision of title 43, it being the intent of this paragraph that a license shall not be granted to a club which is, or has been, primarily formed or activated to obtain a license to sell liquor, but solely to a bona fide club, where the sale of liquor is incidental to the main purposes of the club.

As appellant observes, the state liquor board "may" issue a liquor license to a club that meets one of the definitions of § 4–101. A.R.S. § 4–205(A). In addition, pursuant to A.R.S. § 4–244:

It is unlawful:

1. For a person to buy for resale, sell or deal in spirituous liquors in this state without first having procured a license duly issued by the board.

2. For a person to sell or deal in alcohol for beverage purposes without first complying with this title.

"Sell" is defined as "soliciting or receiving an order for, keeping or exposing for sale, directly or indirectly delivering for value, peddling, keeping with intent to sell and trafficking in." A.R.S. § 4–101(26).

We need not address this issue at great length, however. Appellant has not produced evidence sufficient to bring the local chapter within either of the definitions of club quoted above. Thus, we find no merit to appellant's contention that the local chapter was some sort of de facto licensee.

## CUSTODIAL LIABILITY

The trial court requested and received additional memoranda from the parties on the issue of the custodial liability of the local chapter, the house corporation, and the national fraternity. The minute entry is unclear as to the exact basis of the court's ruling with regard to those appellees. All, however, included the immunity of § 4–312(B) as one of the bases for their summary judgment motions. We believe that our determination that A.R.S. § 4–312(B) is both applicable and constitutional resolves the issues as to all appellees.

Therefore, we need not address the lengthy arguments of all parties on the issue of custodial liability.

The summary judgments entered in favor of all appellees are affirmed.

ROLL, P.J., concurs.

HATHAWAY, Judge, dissenting.

### I.

The majority opinion finds no common law duty toward minors and thus no cause of action in this case. I respectfully dissent.

Although no prior Arizona case has addressed the specific issue of whether a social host may be liable for the foreseeable consequences of illegally furnishing alcohol to a minor, *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983), I believe contemplates such a duty.

There, the court considered the question of a licensee's liability for damages resulting from the death of an intoxicated minor and his two minor passengers in a motor vehicle accident which occurred after the licensee served alcohol to the boys. The court reasoned that it was foreseeable that a minor served alcohol would become intoxicated and injure himself or others. The characteristic immaturity of a minor gives rise to this foreseeable risk. The court held that "a supplier of liquor is under a common law duty of reasonable care in furnishing liquor to those who, by reason of immaturity ... may lack full capacity of self-control and may therefore injure themselves, as well as others." Id. at 516, 667 P.2d 213.

Keeping in mind the special status generally accorded minors by the law, I read *Brannigan* to recognize a common law duty of reasonable care when furnishing alcohol to a minor, *regardless of whether the individual furnishing the alcohol is a licensee or a social host.* While *Brannigan* involved a defendant tavern owner, it does not appear that the court limited its decision to licensees; it referred generally to "supplier" in its holding. Further, much of the rationale fits the instant situation.

The *Brannigan* court found support for a common law duty toward minors in three areas: Case law from other jurisdictions; general tort principles; and, Arizona statutory law. The court made the point that all the cases it cites "are but an example of the general rule that one who furnishes a dangerous instrumentality to a person not competent to use it is liable when that person misuses the item furnished and injures himself or another." *Id.* The court then quoted the Restatement (2d) of Torts, § 390 (1965) for the rule that:

> [o]ne who supplies ... a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to *himself* and others ... is subject to liability for physical harm resulting to *them.*

(Emphasis added.) The general tort duty is not limited to licensees; it is all-inclusive.

The court, noting that it, like most courts, relied on statutes to find the existence of a duty on which to base a cause of action, found that A.R.S. § 4–244(9) and § 4–241(A) could serve as such a base because both constitute legislative recognition of the foreseeable danger posed by intoxicated minors. Both statutes prohibit a licensee *or other person* from selling or *giving* alcohol to an underage person, thus undergirding a duty toward minors.

## II.

I agree with the appellant's contention that A.R.S. § 4–312(B) is constitutionally invalid because it abrogates a right of action in violation of Article 18, § 6 of the Arizona Constitution. In applying Article 18, § 6, this court should be guided by its absolute duty to protect constitutional rights. *Marquez v. Rapid Harvest Co.*, 1 Ariz.App. 562, 565, 405 P.2d 814, 817, vacated on other grounds, 99 Ariz. 363, 409 P.2d 285 (1965), citing *Bristor v. Cheatham*, 75 Ariz. 227, 234, 255 P.2d 173, 177 (1953). The constitutional mandate of § 6 is to preserve common law rights and correlative duties in tort. *Marquez*, supra, 1

Ariz.App. at 565, 405 P.2d 814. To carry out this mandate, we should apply § 6 broadly to protect the general right to recover damages and to include all actions recognized at common law. *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 730 P.2d 186 (1986), cert. denied, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987).

Appellees would have us undercut the mandate of § 6 by finding that it does not protect a civil suit against a social host for damages caused by furnishing alcohol to a minor because such a suit just now comes before the court. Appellees admit that in *Boswell*, the court clearly did not limit the protection of § 6 to actions in existence in 1910 when the Arizona Constitution was adopted, but argue that in *Bryant v. Continental Conveyor & Equip. Co., Inc.*, 156 Ariz. 193, 751 P.2d 509 (1988), the court did so limit § 6. A careful reading of *Bryant*, however, shows that court specifically left *Boswell* as good law, reiterating that *Boswell* held § 6 protects actions for negligence. *Bryant*, supra, 156 Ariz. at 195, 751 P.2d 509. Further, § 6 has been construed so that the phrase "right of action" is equivalent to the common law action for negligence. *Landgraff v. Wagner*, 26 Ariz.App. 49, 546 P.2d 26, appeal dismissed, 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 (1976). Because the cause of action at issue here is a species of negligence action, it is protected by § 6 regardless of when it first appears in the Arizona courts. To rule otherwise is to violate the broad guarantee of § 6.

## III.

Appellants argue correctly that once A.R.S. § 4–312(B) is invalidated, A.R.S. § 4–301 becomes dispositive of the issue in this case. On its face, § 4–301 immunizes social hosts from liability for death or injury caused by their adult guests. This section also operates to exclude that immunity where the acts of minor guests are involved. I reach this interpretation by following the rule of statutory construction which holds that the expression of one or more items of class in a statute indicates intent to exclude all items of the same class

which are not expressed. *Pima County v. Heinfeld*, 134 Ariz. 133, 654 P.2d 281 (1982); *Wells Fargo Credit Corp. v. Arizona Property and Cas. Ins. Guar. Fund*, 165 Ariz. 567, 799 P.2d 908 (App.1990). Therefore, I read A.R.S. § 4–301 to permit the imposition of liability where the social host serves alcohol to a minor, i.e., a person not of the legal drinking age.

It is well accepted that the court has a general obligation to construe a statutory provision in the context of related provisions and in light of its place in the statutory scheme. *Wells Fargo*, supra. Construing A.R.S. § 4–301 to allow liability with regard to minors is consistent with the sanctions found in A.R.S. § 4–244(9) and § 4–241(A). A contrary reading of § 4–301 creates contradiction within the statutory framework and is at variance with the legislative intent shown in the prohibitions. A statutory scheme that proscribes furnishing alcohol to minors for public policy reasons, and then attempts to immunize the same act from civil liability, seems to have lost its way. Accordingly, it is appropriate to regain our bearing by looking to the Arizona Constitution.