898 P.2d 1000

Gary K. RUDOLPH and Carolyn F. Rudolph, husband and wife; and parents of the deceased, Heather L. Rudolph, Plaintiffs–Appellants,

v.

ARIZONA B.A.S.S. FEDERATION aka Arizona Bass Angler's Sportsmen Society Chapter Federation, Inc., an Arizona corporation; Grand Canyon Bass Busters; Dick Diaz and Susan Diaz, husband and wife; Defendants–Appellees.

No. 1 CA–CV 93–0405.

Court of Appeals of Arizona, Division 1, Department A.

June 29, 1995.

Guy W. Bluff, P.C. by Guy W. Bluff and Bruce A. Smidt, P.C. by Bruce A. Smidt, Phoenix, for appellants.

Jones, Skelton & Hochuli by Kathleen L. Wieneke and Eileen J. Dennis, Phoenix, for appellees.

## OPINION

WEISBERG, Judge.

Plaintiffs appeal the trial court's granting of defendants' motion for summary judgment in a negligence action. Because we disagree with the trial court's conclusion that defendants owed no duty to plaintiffs' deceased daughter, we reverse and remand for further proceedings.

## FACTS[1] AND PROCEDURAL BACKGROUND

On Sunday, May 3, 1992, defendant Grand Canyon Bass Busters ("GCBB") sponsored a bass fishing tournament. The tournament originally had been planned for Alamo Lake but, because that lake was unavailable for the selected weekend, the GCBB membership voted to hold the tournament at Bartlett Lake. They did so despite the opposition of a number of the members who felt that Bartlett Lake was too congested with boat and jet ski traffic.

To hold its tournament on Bartlett Lake, GCBB obtained a permit from the United States Forest Service. The permit was signed by defendant Richard Diaz, who served as president of GCBB and director of the tournament. GCBB accepted the permit subject to the condition that "[t]he permittee shall assure that all participants operate boats in a safe and reasonable manner without endangering the peace and safety of other persons in and about the lake."

GCBB did not, however, patrol the lake to ensure that participants were obeying the rules during the tournament because, according to Diaz, club members were expected to police themselves. Nor did the club provide any safety instructions to the tournament participants or require that its members take any boating safety classes. The club did, however, advise its members to be very courteous while on the lake.

Tournament participants were allowed to fish the entire lake, which covers more than 2,700 acres. Nevertheless, GCBB designated only one weigh-in site, which was located near the main launch area. The tournament required participants to return to the weigh-in station before a 1:00 p.m. deadline to avoid penalties or even disqualification.

On the date of the tournament, plaintiffs' daughter, Heather, and her friend, who were not participating in the tournament, were riding a jet ski on Bartlett Lake. At approximately 12:55 p.m., a boat operated by James A. Kirkland collided with the jet ski. Heather and her friend died at the scene.

At the time of the accident, Kirkland and his passenger, Phil Allen, were participating in the tournament. When the crafts collided, approximately five minutes before the 1:00

---

1. We view the facts and evidence in the light most favorable to the party against whom judgment was granted and draw all reasonable inferences in favor of that party. *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

p.m. deadline, Kirkland's boat was travelling at a speed in excess of forty miles per hour and was headed toward the weigh-in station approximately four miles away.

Kirkland had not caught any fish on that day, but Allen had caught a fourteen-inch fish estimated to weigh two and one-half pounds. Though Allen said that he did not believe he would win anything with a fish that size, bass of lesser size had won prizes in previous GCBB tournaments. In fact, Allen had won "1st Big Fish" with a bass of 2.15 pounds in a prior tournament.

In September, 1992, plaintiffs filed a wrongful death action against Kirkland and his wife; the Arizona B.A.S.S. Federation ("the Federation"), GCBB's parent organization; GCBB; and Diaz and his wife ("the Diazes"). Plaintiffs alleged that the Federation and GCBB were negligent in providing only one weigh-in station and requiring the tournament participants to return to the dock at a time when the lake would be otherwise congested. They also alleged that the Federation and GCBB negligently failed to control and supervise the participants in the tournament and to conduct the tournament within state regulations.

The Federation, GCBB, and the Diazes filed a motion for summary judgment arguing they owed no duty to Heather because there was no special relationship between them and Heather. They also argued that they were neither in control of the area where the accident occurred nor in control of the actions of Kirkland or Heather. Alternatively, they maintained that, if they did owe a duty, any breach of that duty was not the proximate cause of Heather's death.

The trial court found that no special relationship existed between these defendants and Heather and that, therefore, there was no duty owed by them to her. Accordingly, the court granted summary judgment and dismissed plaintiffs' claims against the Federation, GCBB, and the Diazes. Following its denial of plaintiffs' motion for reconsideration, the trial court entered a final partial judgment which plaintiffs timely appealed against GCBB and the Diazes ("defendants") only.

## DISCUSSION

### A. Duty of Care

The issue of duty is generally decided by the trial court as a matter of law. *Bellezzo v. State*, 174 Ariz. 548, 550, 851 P.2d 847, 849 (App. 1992). A defendant who does not owe a duty to a plaintiff cannot be liable for the plaintiff's injury even if the defendant acted negligently. *Mack v. McDonnell Douglas Helicopter Co.*, 179 Ariz. 627, 629, 880 P.2d 1173, 1175 (App.1994).

Duty "arises out of the recognition that relations between individuals may impose upon one a legal obligation for the benefit of the other." *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983). Determining the existence of duty involves the "question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Id.* (quoting W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 53, at 324 (4th ed. 1971)). In other words, does the relationship between the parties impose on the defendant an obligation to use some care to avoid injury to the plaintiff? *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

In the instant case, defendants argue that they owed no duty to Heather because they had no relationship with her from which a duty could arise. They point out that Heather was not connected with either GCBB or the tournament, was not a spectator to the tournament, and did not entrust herself to the care of GCBB. Defendants conclude that nothing about GCBB's conduct made Heather a foreseeable plaintiff and, thus, no duty of care existed.

We disagree. Appellees view too narrowly the type of relationship that imposes a duty. Courts take a broad view of the class of risks and the class of victims that are foreseeable for the purpose of finding a duty. *Donnelly Const. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984). There is no requirement that a foreseeable plaintiff must be connected with or personally known to the defendant for a duty to exist. *See, e.g., Alhambra School Dist. v. Superior Court*, 165 Ariz. 38, 796 P.2d 470 (1990).

For example, every driver on the public highways owes to all other users of the highways a duty to drive carefully so as not to subject them to unreasonable risks of harm. *See, e.g., Krauth v. Billar,* 71 Ariz. 298, 226 P.2d 1012 (1951); *Brooks v. De La Cruz,* 12 Ariz.App. 591, 473 P.2d 793 (1970). This duty exists even though a driver does not know any of the other drivers, passengers, or pedestrians, and the only connection is that they are using the same streets. *See Zanine v. Gallagher,* 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985) (where parties are strangers, relationship giving rise to duty may be inferred from general duty imposed on all persons not to place others at risk of harm through their actions; scope of duty limited to reasonably foreseeable risks).

Similar to drivers on the roadways, a user of a lake owes a duty to use due care to avoid injuring all other users of the lake. By conducting a tournament at Bartlett Lake, defendants clearly were users of the lake, as was Heather. Defendants therefore had a duty to exercise due care in designing and conducting the tournament so as not to injure other users of the lake.

The California Supreme Court found a duty under analogous circumstances in *Weirum v. RKO General, Inc.,* 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36 (1975). In *Weirum,* the defendant's youth-oriented radio station conducted a contest that rewarded the first listener to locate a mobile disc jockey. In the course of the contest, a minor contestant negligently forced a car off the highway, killing the occupant. On appeal from the jury verdict in favor of the victim's survivors, the *Weirum* court held that the station owed a duty to the victim, noting that "every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." *Id.,* 123 Cal.Rptr. at 471, 539 P.2d at 39. The court further concluded that it was foreseeable that the station's youthful listeners would race to find the disc jockey and, in their haste, might disregard highway safety, thereby creating a risk of injury to other users of the highways. *Id.,* 123 Cal.Rptr. at 471–72, 539 P.2d at 39–40.

Defendants argue that *Weirum* is distinguishable because the tournament rules in the instant case did not require participants to race to the weigh-in station to be the first one there in order to win a prize. This distinction, however, is immaterial to the question whether the tournament sponsors had a duty to people using the same highways or waterways as the contestants. Defendants make the mistake of equating the question of duty with specific details of their conduct. As our supreme court has repeatedly made clear, "[t]he specific details of conduct involved do not determine the duty owed but bear on the issue of whether a defendant has breached a duty owed." *Alhambra School Dist.,* 165 Ariz. at 41, 796 P.2d at 473; *Markowitz,* 146 Ariz. at 355, 706 P.2d at 367. Accordingly, we conclude that defendants owed Heather a duty to use reasonable care in designing and conducting their tournament to prevent other users of the lake from being injured.

We note that defendants also argue that they did not have a duty to control the conduct of Kirkland. We do not view this issue, however, as distinct from defendants' duty to exercise reasonable care in designing and conducting the tournament. Whether defendants should have done more to ensure the reasonable conduct of tournament participants concerns whether they exercised reasonable care under the circumstances and is thus a question of fact properly reserved for the jury.

### B. *Breach of Duty*

Having determined that defendants owed Heather a duty, we now consider whether defendants arguably breached the standard of care applicable to that duty. *See Lasley v. Shrake's Country Club Pharmacy, Inc.,* 179 Ariz. 583, 586, 880 P.2d 1129, 1132 (App.1994). The test for whether defendants' conduct was negligent is whether there was a foreseeable and unreasonable risk of harm from that conduct. *Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 31, 893 P.2d 26, 31 (App.1994); *Rogers,* 170 Ariz. at 402, 825 P.2d at 23 ("[W]hether the risk was unreasonable . . . merges with foreseeability to set the scope of the duty of reasonable

care."). Whether the defendant's conduct breached the applicable standard of care ordinarily is decided by the trier of fact. *Lasley,* 179 Ariz. at 586, 880 P.2d at 1132. In some cases, however, the court may determine, as a matter of law, that there is no evidence of breach and, therefore, that the defendant was not negligent. *Coburn v. City of Tucson,* 143 Ariz. 50, 53, 691 P.2d 1078, 1081 (1984); *Rogers,* 170 Ariz. at 402–03, 825 P.2d at 23–24. Accordingly, despite the trial court's error in granting summary judgment based on the lack of duty, we can affirm the trial court's judgment if there is no evidence that defendants breached their duty. *See Lasley,* 179 Ariz. at 586, 880 P.2d at 1132.

We conclude, however, that plaintiffs have presented sufficient evidence on the issue of breach to withstand summary judgment. Plaintiffs offered evidence of the following relevant facts. Defendants chose Bartlett Lake on which to conduct their tournament, a lake they knew to be congested with boating and jet ski traffic. Defendants designated only one weigh-in station on the 2700–acre lake and placed the station near the main launch area where traffic was particularly heavy. They also established a deadline of 1:00 p.m., a time when the area would be especially crowded. The design of the tournament encouraged participants to fish on the lake as long as possible before hurriedly returning to the weigh-in station to beat the 1:00 p.m. deadline.

Defendants argue that, despite this evidence, there is an insufficient showing of breach because plaintiffs did not offer evidence to show that this conduct fell below the standard of care applicable to a reasonable fishing club. Defendants thus appear to argue that plaintiffs were required to present expert testimony to establish the appropriate standard of care and whether defendants' conduct fell below that standard.

We disagree. The lack of testimony that defendants' actions fell below the standard of care does not clearly indicate that they did not breach the standard of care in this case. We conclude that this case is more akin to an ordinary negligence action than one involving a professional defendant, such as a health care provider, for which specialized standards of care apply. The applicable standard of care, therefore, is that of a reasonably prudent person or entity under the circumstances. *Id.* at 586, 880 P.2d at 1132.

Expert testimony is unnecessary when the disputed subject is something that persons unskilled in the relevant area are capable of understanding and are therefore able to decide relevant fact questions without the opinions of experts. *Baker v. Mid Maine Medical Ctr.,* 499 A.2d 464, 469 (Me. 1985) (holding that a jury is capable of determining, without expert testimony, whether precautions taken by golf tournament sponsors were reasonable). We believe that a typical jury would be able to determine without expert testimony whether defendants conducted the tournament in a reasonable manner so as not to subject other users of the lake to an undue risk of harm from tournament activities. Accordingly, the evidence was sufficient to raise material issues of disputed fact concerning whether defendants breached the applicable standard of care.

### C. *Proximate Cause*

Defendants lastly argue that, even if there is some evidence of their negligence, the record lacks any evidence from which a jury could conclude that their conduct proximately caused Heather's injury. They contend that Allen's testimony that he and Kirkland were not racing to the weigh-in station, and that he did not believe his fish was in contention for any prizes, was undisputed and dispositive. Again, we disagree.

In a negligence action, the plaintiff must show a reasonable connection between the defendant's act or omission and the plaintiff's injury or damages. *Robertson v. Sixpence Inns of America, Inc.,* 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). "The defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." *Id.* (citing *Ontiveros,* 136 Ariz. at 505, 667 P.2d at 205). To establish proximate cause, a plaintiff "need only present probable facts from which the causal

relationship reasonably may be inferred." *Id. See also Wisener v. State,* 123 Ariz. 148, 150, 598 P.2d 511, 513 (1979) (stating that the plaintiff need not negate entirely the possibility that the defendant's conduct was not a cause). The question of proximate cause is usually a question of fact for the jury. *Robertson,* 163 Ariz. at 546, 789 P.2d at 1047.

██ Allen's testimony that he and Kirkland were not racing to the weigh-in station is not undisputed. The record shows that Kirkland's boat was about four miles from the weigh-in station and headed towards it at a speed in excess of forty miles per hour. The bass caught by Allen was in the holding tank of the boat, and Allen had previously won a tournament prize with a slightly smaller fish. From these facts, reasonable jurors could conclude that, despite Allen's testimony, the men were speeding to the weigh-in station to beat the 1:00 deadline so that they would not be penalized or disqualified.

The facts that GCBB chose a crowded lake for its tournament, set up its weigh-in station at a congested area, and ended the tournament at a busy time of day could have contributed to Heather's death by arguably causing Kirkland to be racing to the weigh-in station when his boat collided with Heather's jet ski. The evidence presented by plaintiffs, therefore, provides a reasonable basis for a jury to conclude that defendants' conduct was a causative factor in Heather's death.

### CONCLUSION

We conclude that defendants owed a duty to Heather to exercise due care in designing and conducting the fishing tournament. We further conclude that the record contains sufficient evidence of disputed facts on the alleged breach of the standard of care and on proximate cause to submit those issues to the trier of fact. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

FIDEL, P.J., and GARBARINO, J., concur.