22 P.3d 508

Ronald FEHRIBACH, as Personal Representative of the Estate of Stella A. Fehribach, deceased, Plaintiff-Appellant,

v.

Kenneth SMITH and Jozelle Smith, individually and as Trustees of the Smith Family Trust; Mato Corporation, an Arizona corporation; Michael Martinez and Jane Doe Martinez, husband and wife, Defendants-Appellees.

No. 1 CA-CV 00-0382.

Court of Appeals of Arizona, Division 1, Department B.

April 26, 2001.

Jack Levine, Phoenix, Attorney for Plaintiff–Appellant.

Ricker & Bustamante, L.L.P., by Dennis A. Sever, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

FIDEL, Judge.

¶ 1 The injury that underlies this lawsuit resulted from a dangerous condition on premises that had been owned and operated by the appellees, but had been placed in receivership four days before the injury. We consider on appeal whether the transfer of possession and control to the receiver wholly relieved the appellees of liability for an injury that a fact-finder might conclude had resulted, at least in part, from their failure to repair the dangerous condition during the tenure of their possession and control.

### BACKGROUND

¶ 2 On the evening of Sunday, October 19, 1996, Mrs. Stella Fehribach, an elderly resident of a Mesa apartment complex, returned from an extended absence. As she walked through an unlit portion of the parking lot on the way toward her apartment, she stepped in a large pothole and fell, injuring her left hip and left side. Two months later, she died, allegedly as a result of her injuries.

¶ 3 The apartment complex was owned by the Smith Family Trust and managed for an extended period before the injury by the Mato Corporation and Michael Martinez. But on October 15, 1996, four days before the injury, a judge of the superior court appointed Sureway, Inc. as the receiver of the property and ordered Sureway to take immediate "physical possession and control of the property" and "maintain the same in good condition and repair." The Mato Corporation's and Martinez's management services had been terminated by that time, but the Smith Family Trust remained in ownership.

¶ 4 On the afternoon of October 17, Sureway inspected the property and discovered the large pothole in the parking lot. Because October 17 was a Friday, Sureway postponed repairing the pothole until the following week. But Sunday evening Mrs. Fehribach took her fall.

¶ 5 Ronald Fehribach, the son of Mrs. Fehribach and personal representative of her estate, filed this lawsuit against Kenneth and Jozelle Smith (the trustees of the Smith Family Trust), the Mato Corporation, and Michael and Jane Doe Martinez (collectively the "Smith Defendants"), and against Sureway, seeking damages for Mrs. Fehribach's medical bills and for loss of consortium on behalf of her survivors. The Smith Defendants moved for summary judgment, claiming that because they lacked possession and control of the property at the time of Mrs. Fehribach's injury, they owed her no duty of care. They based this argument on the Restatement (Second) of Torts § 352, which states that "a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition . . . which existed at the time that the vendee took possession."

¶ 6 The trial court agreed. In a minute entry granting summary judgment in favor of the Smith Defendants, the court reasoned that, because the property was in control of a receiver rather than the Smith Defendants at the time of the injury and because the receiver had "sufficient time . . . to make the repair to the pothole," it was only the receiver and not the Smith Defendants who owed

Mrs. Fehribach a duty of care. From a final judgment later entered in accordance with this ruling, Fehribach timely appeals.

### ON DUTY, BREACH, LEGAL CAUSE, AND RESTATEMENT § 352

¶ 7 Whether a defendant owes a plaintiff a duty of care is a question of law that we independently review. *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 195, 963 P.2d 271, 274 (App.1997). The existence of a duty should not be confused with the details of its scope. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985). Such confusion "incorrectly leads to attempts to decide on a general basis whether a defendant has a 'duty' to post warning signs, fix potholes, or provide additional traffic signs." *Id.* (citations omitted).

¶ 8 Because the trial court relied on Restatement (Second) of Torts § 352 in concluding that the Smith Defendants lacked a duty to Mrs. Fehribach, we first address that section. In *Dorman v. Swift & Co.*, 162 Ariz. 228, 231, 782 P.2d 704, 707 (1989), our supreme court declined to apply § 352 to bar the liability of a former property owner for the negligent construction and installation of machinery on the property. The *Dorman* court declined to decide the abstract question whether § 352 "always or never applies"; rather it "[left] open the question whether it might apply in a different case." *Id.* The following year, in *Andrews ex rel. Kime v. Casagrande*, 167 Ariz. 71, 75, 804 P.2d 800, 804 (App.1990), this court concluded that "if section 352 is ever to apply in Arizona, it is in just such a case as the one now before us ." There, we applied § 352 to relieve homeowner-vendors of liability for a dangerous condition on their property that was unconcealed and obvious at the time of sale. *Id.* In *Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 268, 836 P.2d 968, 978 (App.1991), we concluded that the liability relief that owner-vendors enjoyed under § 352, according to *Andrews*, should extend to commercial builder-vendors as well. *Andrews* and *Menendez*, however, were expressly cases of "[v]endor nonliability." *See id.* at 267, 836 P.2d at 977. No Arizona appellate court has

imposed the liability barrier of § 352 where ownership has not changed hands.

■ ¶ 9 Nor does the Restatement propose such a result. The Restatement (Second) of Torts § 354(1) extends the rationale of § 352 "to any former owner of land whose ownership and possession have been transferred otherwise than by sale." But the Restatement establishes a different rule for those who transfer management and control without relinquishing ownership. Specifically, in § 387, the Restatement subjects property managers to the same liability as those from whom they take control, but specifies that "[t]he liability stated in this Section does not displace the liability of [the original] possessor for the harm done." Restatement (Second) of Torts § 387, cmt. c. Section 387 applies "where a person, partnership, or corporation making a business of the management of real estate takes over *the entire charge* of a building or parcel of land, including the renting or collection of rent as well as its maintenance in safe repair." *Id.,* cmt. b (emphasis added). Thus, according to the principles embodied in the Restatement, the transfer of responsibility to a property manager such as Sureway does not relieve an owner entirely of liability for dangerous conditions on the premises.

¶ 10 We recognize that a receiver, unlike other property managers, is not chosen by an owner but forced upon the owner by a court. Because an owner subjected to a receivership is thus divested of control, according to the Smith Defendants, the policy that underlies the liability shield of § 352 should extend equally to such an owner as to one who transfers control by means of a sale. Specifically, an underlying premise of § 352 is that vendors, lacking control over the property, can no longer enter it to remedy dangerous conditions, and that vendees, who take control over the property, are "presumed to have inspected the premises prior to conveyance" and to have accepted the entire responsibility for any dangerous conditions that should have been obvious in the course of their inspection. *Dorman,* 162 Ariz. at 231, 782 P.2d at 707. Similar considerations favor relieving an owner of responsibility when the owner is divested of control in favor of a receiver, according to the Smith Defendants, because a receiver—at least as the Smith Defendants envision the appointment process—can conduct a similarly thorough inspection before accepting managerial responsibility for the property.

¶ 11 One flaw in this argument is that it assumes facts not in evidence. How much opportunity a receiver has for inspection before accepting an appointment is neither a fact addressed within the record nor a proper subject of judicial notice by the court.

¶ 12 Even if the Smith Defendants' assumption were proven to be correct, however, we would decline, for two reasons, to expand the liability shield of § 352 beyond its Restatement bounds. First, Arizona has only gingerly applied the liability shield of § 352 to date. *See Dorman,* 162 Ariz. at 231, 782 P.2d at 707; *Andrews,* 167 Ariz. at 75, 804 P.2d at 804. Such case law does not commend an expansive application of the doctrine.

¶ 13 Second, and of greater importance, to relieve an owner of even proportionate liability and to make a receiver entirely liable under circumstances such as these would clash with principles of comparative fault and comparative contribution that are well-established under Arizona law. *See Hutcherson v. City of Phoenix,* 192 Ariz. 51, 54, ¶¶ 15–16, 961 P.2d 449, 452 (1998) (our comparative fault and contribution statutes undertake to increase the fairness of our tort system by making all contributing tortfeasors bear responsibility for accidental injuries in proportion to their relative degrees of fault); *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (the underlying public policy of these statutes is to make each person "responsible for paying his or her percentage of fault *and no more* ").[1]

---

1. Indeed, the volume of the Restatement (Second) of Torts containing § 352 was published in 1965, long before the advance of comparative responsibility and comparative contribution in the law of torts. A new Restatement is now emerging, including publication in 2000 of the Restatement (Third) of Torts: Apportionment of Liability, a volume devoted entirely to issues of apportionment of liability when more than one person is legally liable for an injury.

¶ 14 To explain why a complete shield to owner liability in present circumstances would clash with fundamental principles of comparative fault and comparative contribution, we may begin by observing that the elements of liability—duty, breach, and causation—may each be reasonably resolved against the Smith Defendants upon the evidence presented in this case. The first of these elements is duty. Mrs. Fehribach leased an apartment from the Smith Defendants, and under Arizona law, they unquestionably owed her a duty to exercise reasonable care during the extended period that they possessed, controlled, and operated the apartment complex. "Arizona recognizes that a possessor of land 'is under an affirmative duty' to use reasonable care to make the premises safe for use by invitees." *Markowitz,* 146 Ariz. at 355, 706 P.2d at 367 (quoting *Tribe v. Shell Oil Co.,* 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982)).

¶ 15 The Smith Defendants argue that any duty they owed to Mrs. Fehribach ended when they relinquished control to the receiver. This argument, however, incorrectly assumes that the date of injury and the preceding three days of Sureway's receivership comprise the only slice of time during which actionable negligence could have occurred in this case. During the time that preceded Sureway's receivership, the Smith Defendants clearly owed Mrs. Fehribach a duty of reasonable care. The relevant remaining questions are of breach and causation: whether the Smith Defendants may be found, during the extended period of that duty, to have breached it and, if so, whether their breach may be reasonably found, despite the brief intervention of Sureway's management, a contributing cause of Mrs. Fehribach's fall.

¶ 16 Breach and causation are ordinarily questions of fact for the jury to resolve. *See Rudolph v. Arizona B.A.S.S. Fed'n,* 182 Ariz. 622, 626–27, 898 P.2d 1000, 1004–05 (App.1995). This case is no exception. Here reasonable fact-finders might conclude (1) that the Smith Defendants subjected tenants such as Mrs. Fehribach to a foreseeable and unreasonable risk of injury by neglecting to repair a deep pothole in an unlit area that tenants traversed as they walked from their cars to their apartments; (2) that Mrs. Fehribach would not have fallen but for the Smith Defendants' extended period of neglect; *see id.* (legal causation exists when a plaintiff's injuries would not have occurred but for a defendant's failure to act reasonably in light of foreseeable and unreasonable risks); and (3) that the consequences of this neglect had neither dissipated nor been superseded during the several days of Sureway's management that intervened before Mrs. Fehribach's fall.

¶ 17 We do not suggest that an owner's share of fault for a dangerous condition on property placed in receivership might not dissipate as the receivership continues over time. A fact-finder would reasonably consider the receiver's time and opportunity to repair such a condition in apportioning relative shares of fault. We do conclude, however, that the trial court erred in this case by finding as a matter of summary judgment that "sufficient time existed [for Sureway] to make the repair to the pothole." Sureway, as we have indicated, inspected the property on a Friday afternoon, and Mrs. Fehribach fell on Sunday evening the same weekend. Under these circumstances, it was up to the jury, not the trial court on summary judgment, to compare and allocate fault as between Sureway and the Smith Defendants.

CONCLUSION

¶ 18 Because neither Restatement § 352 nor general tort principles relieve the Smith Defendants of liability in this case, we conclude that the trial court erred in granting them summary judgment and in concluding that they owed no duty of care. We reverse the summary judgment and remand for further proceedings consistent with this opinion.

CONCURRING: JAMES B. SULT, Presiding Judge, CECIL B. PATTERSON, Jr., Judge.