Elena WHITE, Plaintiff,

v.

UNITED STATES of America and Reeverson Descheny, Defendants.

No. Civ. 03–1823 PCT RCB.

United States District Court, D. Arizona.

March 21, 2006.

Scott Eugene Borg, Barber & Borg LLC, Albuquerque, NM, for Plaintiff.

John Robert Mayfield, U.S. Attorney's Office, Robert Corey Hill, Cavanagh Law Firm PA, Phoenix, AZ, for Defendants.

## ORDER

BROOMFIELD, Senior District Judge.

On April 30, 2004, Plaintiff Elena White ("White"), acting individually and as the parent and next friend of Sherianna White ("Sherianna"), filed an Amended Complaint in this matter. (doc. 22). Thereafter, on April 14, 2005, both Defendants Reeverson Descheny ("Descheny") and the United States of America ("the Government") moved for summary judgment.[1] Descheny Motion (doc. 45); USA Motion (doc. 48). These motions were fully briefed on July 29, 2005. USA Reply (doc. 65). In addition, the Government moved to strike the Affidavit of Ronald Garrison and portions of White's Statement of Facts. Mot. to Strike (doc. 67). This motion was fully briefed on October 11, 2005. Reply (doc. 88). Having carefully reviewed the arguments submitted by the parties, the Court now rules.

## I. Background Facts

This case arises out of an automobile accident occurring on October 18, 2002, at the Rock Point Community School ("the school"), which is located on the Navajo Indian Reservation. On such date, Sherianna was injured when she fell from the

---

1. In his motion for summary judgement, Descheny requested oral argument on this matter. Descheny Motion (doc. 45). Finding oral argument unnecessary, the Court shall deny this request.

top of the cab of a pick-up truck that was being used in the homecoming parade at the school. The parade was held on school property, and both the roads and the parking areas used during the parade were within the school's grounds.

On the day of the accident, Descheny was home from an out-of-state school and attended the parade with his parents. Upon arriving at the school, Descheny visited with his brothers and assisted them in preparing their float for the parade. At some point before the parade began, Descheny met his cousin, Roderick Descheny ("Roderick"). Descheny was advised that Roderick was planning to drive the Junior Class float in the parade but that a school employee would not allow him to do so. Roderick asked Descheny if he would drive the parade route in his place, and Descheny agreed to drive the float.

The vehicle Descheny was to drive in the parade belonged to Roderick's parents, who had given Roderick permission to drive the truck to the school grounds and to use it in the parade. Descheny got behind the wheel of the vehicle and Roderick sat in the passenger seat. Descheny then drove the parade route, traveling at a slow speed the entire way.

After completing the parade route, he returned the truck to the school parking lot where he originally found it, and parked the vehicle. Descheny then turned off the engine, left the keys in the ignition and exited the vehicle. Sometime soon after Descheny left the vehicle, Roderick got in the driver's seat, turned on the

vehicle and started to drive. At that time, Sherianna was still in or on the vehicle and fell off when Roderick pulled away.

Sherianna was injured in the fall from the top of the cab of the truck. From her fall, Sherianna landed on her head and allegedly sustained a traumatic brain injury, among other injuries, such as a fractured wrist. White sued Descheny and the Government[2] in this case. It is White's position that the Rock Point School was mostly at fault for Sherianna's injuries, however she believes there was comparative fault on the part of Descheny. Specifically, "[i]t is Plaintiff's position that the Rock Point School was negligent, that the parade was mismanaged, that the school created a dangerous condition, that the school failed to prepare adequately for the safety of participants, and that there was negligent supervision of the students from the junior class, who were allowed to ride on a float without a class sponsor, whose presence was required by school rules to be with the students at all times and to maintain their safety." Resp. to USA Motion (doc. 57) at 1–2. White sued both Descheny and the Government under theories of negligence. Amended Complaint (doc. 22).

## II. Motions to Strike

On July 29, 2005, the Government moved to strike portions of White's Statement of Facts, dated June 20, 2005 ("Statement of Facts"), arguing that such portions are "unduly argumentative, draw questionable inference from the evidence,

**2.** This cause of action against the United States arises under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. Although the Rock Point Community School is not an operation of the United States government, the Government has agreed to accept tort liability for independent schools who are contractors of the United States under the Indian Self–Determination and Educational Assistance Act, Public

Law 93–638 (25 U.S.C. § 450 et seq.). The Rock Point Community School is such a school.

Under the Federal Tort Claims Act, the Government adopts state law for determining tort liability. It is liable whenever and to the same extent that a private person would be liable under the laws of the state where the incident occurs. Thus, Arizona tort law applies in this matter.

fail to specifically reference the record and also contain plaintiff's characterization of this case which is improper." Mot. to Strike (doc. 67) at 1. Additionally, the Government moved to strike the Affidavit of Ronald Garrison, pursuant to Federal Rules of Civil Procedure 12(f), 26(e)(1), and Federal Rule of Evidence 702. *Id.*

### A. Portions of White's Statement of Facts

Pursuant to Federal Rule of Civil Procedure 12(f) and Local Rule 56, the Government requests that certain portions of White's Statement of Facts be stricken from the record. Mot. to Strike (doc. 67) at 1. Specifically, the Government moves to strike paragraphs 77, 78, 83, 86, 87, 88, 92, 99, 100, 101, and 102, asserting that such sections of the statement of facts contain argument, factually unsupported allegations, conclusory statements, and questionable inferences from the evidence of record. *Id.* at 2–4. The Government, however, does not identify any authority that directly supports the relief it requests.

Rule 56 of the Federal Rules of Civil Procedure states that,

> ... [a]ny party filing a motion for summary judgment shall set forth separately from the memorandum of law, and in full, the specific facts on which that party relies in support of the motion. The specific facts shall be set forth in serial fashion and not in narrative form. As to each fact, the statement shall refer to a specific portion of the record where the fact may be found (i.e., affidavit, deposition, etc.).

Fed.R.Civ.P. 56.1. In regard to a party opposing a motion for summary judgment, the rule states that such party "must comply with the foregoing in setting forth the specific facts, which the opposing party asserts[.]" *Id.* In the instant case, the Government has not shown that the Statement of Facts violates this rule.

In its motion to strike, the Government questions the bases of many of White's factual statements and asserts that they are argumentative. Such concerns reflect on the weight the Government believes the Court should consider giving the contested "facts." The Court alone shall determine the necessary and deserved weight of each fact alleged by each of the parties in this matter. Therefore, the Court shall deny the Government's motion to strike portions of the Statement of Facts.

### B. Affidavit of Ronald Garrison

Pursuant to Federal Rules of Civil Procedure 12(f), 26(e)(1), and Federal Rule of Evidence 702, the Government requests that the Affidavit of Ronald Garrison be stricken from the record. Mot. to Strike (doc. 67) at 1. In general, the Government argues that Garrison's statements about the school's conduct and the post-parade situation in the parking lot, where the accident occurred, lack a factual basis in the record and equate to impermissible speculation. *Id.* at 11. In turn, the Government argues that such speculation is not sufficient to defeat summary judgment. *Id.* In contrast, White asserts that Garrison's personal experience, education, and training qualifies him as an expert.[3] Resp. to Mot. to Strike (doc. 85) at 3.

---

**3.** Garrison's curriculum vitae, which is attached to his affidavit, indicates that he has sixteen years of experience as a consultant and trainer in safety and security. Garrison Vitae (doc. 58) at 1. He has evaluated over 2,500 schools and other facilities for safety, security, planning and operations, disaster management procedures, and critical incident and risk management procedures. *Id.* His background includes fifteen years as a high school teacher, one year as a college instructor, and six years as a school district administrator. *Id.* He holds a Master of Arts degree,

Expert testimony is admissible only in accordance with Fed.R.Civ.P. 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Trial courts have a gatekeeping obligation to ensure that all expert testimony is reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999). In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court set forth factors to analyze Rule 702 evidence: (1) whether the theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review, (3) whether the error rate is known and standards exist controlling the operation of the technique, and (4) whether the theory or technique has gained general acceptance. 509 U.S. at 593–94, 113 S.Ct. 2786. This list of factors, however is meant to be helpful, not definitive. *See Kumho Tire Co.,* 526 U.S. at 151, 119 S.Ct. 1167. "The determination as to the relevance and reliability of such evidence is committed to the sound discretion of the trial court." *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786.

The Court finds that the Government has failed to show that Garrison's affidavit is unreliable and irrelevant. The parties do not seem to dispute that Garrison has a significant educational and experiential background in school safety and security. The Government merely demonstrates that it disagrees with Garrison's conclusions and the bases for such conclusions. Such disagreements could certainly be

handled during cross-examination of Garrison and the exploration of the opinions of a competing expert utilized by the Government. Therefore, the Court shall deny the Government's motion to strike the Affidavit of Ronald Garrison.

## III. Motions for Summary Judgment

### A. Standard

To grant summary judgment, the Court must determine that the record before it contains "no genuine issue as to any material fact" and, thus, "that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the Court will view the facts and inferences from these facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548. In such a case, the moving party is entitled to a judgment as a matter of law. *Id.*

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

as well as a Master of Science degree. *Id.* Garrison is also a member of the American

College of Forensic Examiners International. *Id.* at 3.

issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.*

A party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers, but instead must set forth specific facts demonstrating a genuine issue for trial. *See id.* at 250, 106 S.Ct. 2505. Finally, if the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Building, Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987).

## B. Descheny's Motion for Summary Judgment

White has sued Descheny in this case under a theory of negligence. Amended Complaint (doc. 22) at 9–11. White alleges the following claimed breaches of Descheny's duty of care:

    a.  intentionally turning over control of the vehicle to a minor who Mr. Descheny knew was not allowed to drive the subject vehicle;

    b.  carelessly leaving the keys in the ignition of the vehicle in the immediate proximity of a relatively inexperienced minor, whom Mr. Descheny knew was not permitted to drive the subject vehicle;

    c.  leaving the vehicle while Sherianna White and other [sic] were still in precarious positions on the vehicle;

    d.  failing to assist Sherianna White in getting down from the top of the cab of the pick-up truck.

*Id.* at ¶ 44. Descheny, in his motion for summary judgment, challenges the viability of White's claim, arguing that, at the time of the accident, he had no specific duty of care to Sherianna, and, even if such a duty existed, he did not proximately cause her injuries. Descheny Motion (doc. 45) at 4–9. For these reasons, Descheny asserts that summary judgment should be granted in his favor.

Negligence is the failure to act as a reasonable and prudent person would act in like circumstances. *Morris v. Ortiz,* 103 Ariz. 119, 437 P.2d 652, 654 (1968). The test of negligent conduct is what a reasonable prudent person would or would not do under the circumstances. *Id.* To put it another way, to constitute actionable negligence the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. *Id.* Thus, initially the Court must determine what duty, if any, did Descheny owe to Sherianna.

The issue of duty is generally decided by the trial court as a matter of law. *Rudolph v. Arizona B.A.S.S. Federation,* 182 Ariz. 622, 898 P.2d 1000, 1002 (1995). "A defendant who does not owe a duty to a plaintiff cannot be liable for the plaintiff's injury even if the defendant acted negligently." *Id.* Determining the existence of a duty involves the question of whether "the relationship between the parties impose[s] on the defendant an obligation to use some care to avoid injury to the plaintiff[.]" *Id.* "Courts take a broad view of the class of risks and the class of victims that are foreseeable for the purpose of finding a duty." *Id.*

Here, the parties do not dispute that Descheny was asked to drive the subject truck along the parade route in order to allow the junior class float to be displayed in the school's homecoming parade. It is logical to conclude that contained within

that request was the responsibility to drive the subject truck from the parking lot to the parade route and from the parade route to the parking lot.

■ White argues that "implicit in the request that [Descheny] drive the float was that he exercise reasonable care." Resp. to Descheny MSJ (doc. 56) at 4. The Court agrees that Descheny owed a duty of reasonable care to the passengers riding in the vehicle to which he held the ultimate control.[4] Having determined that Descheny owed White a duty while he drove the float, the Court must now consider whether he arguably breached the standard of care applicable to that duty.

The question of breach is ordinarily decided by the trier of fact, unless "there is no evidence of breach and, therefore, the defendant was not negligent." *Rudolph*, 898 P.2d at 1004. Where reasonable persons could not differ, the court properly takes the issue from the jury. *See Hill v. Safford Unified School District*, 191 Ariz. 110, 952 P.2d 754, 757 (1997).

■ In the instant case, it is undisputed that Descheny completed the requested task of driving the parade route without incident. In addition, the parties do not dispute that upon returning the vehicle and its passengers to the school parking lot, Descheny proceeded to bring the truck to a complete stop and turned off the engine. At that point, Descheny completed the task of which he had been asked to do, and, by bringing the car to a complete stop and turning off the engine, Descheny exercised reasonable care. From that point forward, Descheny no longer owed a duty of care to the passengers on the float.

White argues that Descheny's act of leaving the keys in the vehicle instead of turning them over to a school official or Roderick's parents was a breach of his duty of reasonable care. Resp. to Descheny MSJ (doc. 56) at 5. Specifically, White contends that by leaving them in the truck, Descheny, in effect, gave them directly to Roderick. *Id.* at 7. In addition, White asserts that Descheny breached his duty of care by failing to ensure that Sherianna exited the vehicle safely. *Id.* at 4–6. The Court disagrees.

"The gratuitous actor does not assume an extended duty independent of the undertaking itself." *Bishop v. State, Dept. of Corrections*, 172 Ariz. 472, 837 P.2d 1207, 1210 (1992). The scope and nature of the undertaking determine the scope and nature of the duty gratuitously assumed. *Id.* In *Bishop*, a high school student was injured in an automobile accident that occurred while she was returning home from a youth conference held in Flagstaff. *Id.* The student, Valery Bishop, brought a negligence action against the organization that recruited her to attend the youth conference, Cochise Community Counseling Services ("CCCS"), claiming that it failed to exercise due care in coordinating and supervising transportation for the students. *Id.* at 1209. The trial court granted summary judgment in favor of CCCS on Bishop's negligence claims, and Bishop appealed. *Bishop*, 837 P.2d at 1209. The Court of Appeals affirmed the trial court's decision, concluding that Bishop had not sufficiently established that CCCS undertook a duty to travel in a caravan with the students, which was the basis of Bishop's claim. *Id.* at 1211. Discussing the limitations of the duty imposed on a gratuitous actor, the court noted that Bishop produced no evidence that indicated that

---

**4.** "An actor who gratuitously undertakes to render services agrees to exercise reasonable care in performing the undertaking." *Bishop v. State, Dept. of Corrections,* 172 Ariz. 472,

837 P.2d 1207, 1210 (1992). However, the scope and nature of the undertaking determine the scope and nature of the duty gratuitously assumed. *Id.*

CCCS had agreed to assure student drivers were licensed drivers and to check the drivers for fatigue. *Id.* at 1210–11. Consequently, the court found that CCCS owed no duty to Bishop. *Id.* at 1211.

Here, White has cited no authority that suggests that any duty of care Descheny owed the passengers while the vehicle was in motion during the parade continued after he returned the vehicle to the parking lot, parked it, and turned off the engine. According to the evidence, Descheny was never asked, nor did he offer, to assist the passengers in exiting the vehicle or remain with the vehicle until all of the passengers exited. It is undisputed that Descheny drove the subject truck to and from the parking lot without incident, that he turned the vehicle's engine off, that the vehicle was not in motion when he left it, and that it was parked in the parking lot.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. The Court concludes that White cannot show that Descheny breached his duty of reasonable care when he was in control of the subject vehicle, nor that he owed a duty of care to Sherianna after he completed driving the float in the parade and returned the truck back to the original parking lot, parked the vehicle and turned off the engine. Consequently, Descheny is entitled to judgment as a matter of law.

## C. The Government's Motion for Summary Judgment

In its motion for summary judgment, the Government argues that it cannot be held liable for Roderick's conduct because (1) he was not an agent of the United States; (2) his acts were impulsive and unanticipated; (3) his acts were not reasonably foreseeable; and (4) the family purpose doctrine renders Roderick's parents solely responsible for White's injuries. USA Motion (doc. 48) at 4–15. White does not challenge the Government's first and fourth arguments, but contests the remaining two arguments. Resp. to USA MSJ (doc. 57).[5]

First, the Government asserts that Arizona law holds that "no negligence, or inadequacy of supervision, can be postulated on a failure to guard against sudden, impulsive or unanticipated acts of a student." USA Motion (doc. 48) at 4. The Government notes that Roderick had been warned twice, earlier that same day, that he was prohibited from driving a vehicle during the parade, and that he had acknowledged that he understood the rules. *Id.* at 5. Under the decision in *Morris,* the Government asserts that Arizona law rejects the idea that a teacher must anticipate the myriad of unexpected acts which occur daily in and about schools and school premises. *Id., citing* 437 P.2d at 654.

Second, the Government argues that Arizona has defined the principles of "foreseeability," in the context of school district liability, in *Hill.* "[U]nder Arizona law, a plaintiff must establish that the school or facility had sufficient specific knowledge or notice of the dangerous conduct which caused injury in order to find that a school or facility breached its duty to provide adequate supervision in the context of injuries caused by the acts of fellow students." *Id., citing Hill,* 952 P.2d at 759–60. The Government argues that, under the circumstances in this case, the school provided adequate and reasonable supervision in

---

**5.** White agrees that the Government is not liable for Roderick's negligence. Resp. to USA MSJ (doc. 57) at 12.

the post-parade parking lot where Sherianna was injured. USA Motion (doc. 48) at 11–14.

In contrast, White asserts that summary judgment should be denied because disputed issues of material fact still remain in the case, and, as a matter of Arizona law, this case must proceed for determination by the fact-finder. Resp. to USA MSJ (doc. 57) at 1. Specifically, she contends that she has presented sufficient evidence to establish that the Rock Point Community School breached its duty of reasonable care to Sherianna. *Id.* at 17. Thus, White argues that the matter should be given to the finder of fact to decide.

■ In the case at bar, the parties do not dispute that the school held a duty of reasonable care to Sherianna. USA MSJ Reply (doc. 65) at n. 9.

> [S]chool teachers and administrators have both a statutory and common law duty not to subject students within their charge to a foreseeable and unreasonable risk of harm through acts, omissions, or school policy.

*Hill,* 952 P.2d at 756. The relationship between the school and Sherianna imposed an additional obligation on the school to take reasonable precautions for her safety. *See id.* Thus, the essential question is whether a reasonable person could conclude that the school breached its duty to Sherianna and proximately caused her injuries. *See id.* at 756–57.

Whereas the finding of a duty is a question of law for the court, the question of breach is ordinarily decided by the trier of fact, unless "there is no evidence of breach and, therefore, the defendant was not negligent." *Rudolph,* 898 P.2d at 1004. Where reasonable persons could not differ, the court properly takes the issue from the jury. *Hill,* 952 P.2d at 757. In addition, the *Rudolph* court stated that the issue of causation is usually an issue for a jury to decide and that the act or omission of the

defendant "need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." 898 P.2d at 1004–05.

■ Under Arizona law, the general test for whether a defendant's conduct has breached the standard of care is whether a foreseeable risk of injury resulted from the defendant's conduct. *Hill,* 952 P.2d at 759. A public school district may be liable for a student's injury if it fails "to act as a reasonable and prudent person would act in like circumstances." *Morris,* 437 P.2d at 654.

> A reasonably foreseeable event is one that might "reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself in the actor's mind."

*Hill,* 952 P.2d at 759.

In *Morris,* a student jumped, suddenly and without warning, onto a piece of metal, injuring another student, 437 P.2d at 653. A teacher was present at the time of the incident but was unable to stop the student's act. *Id.* at 654. The plaintiffs in *Morris* argued that the school breached its duty of reasonable care to the injured student by not designating a group leader that would supervise the group of students of which the injured student and acting student were a part. *Id.* The court, unconvinced by this argument, found that this omission did not reflect a violation of the school's duty of reasonable care, nor did the appellant establish that appointing a student as a group leader would have prevented the incident. *Id.* The court determined that the teacher could not reasonably be expected to anticipate acts by students that occur on sudden impulse. *Id.*

In *Hill*, a student was fatally shot by a fellow student after school hours and away from school premises. 952 P.2d at 755. After the shooting, a negligence action was brought against the school district and a teacher at the school. *Id.* The Court of Appeals held that, despite the fact that there had been arguments between student gang members, the school district did not breach its duty to provide reasonable supervision to the students. *Id.* at 761. Finding no evidence in the record that the teacher or any school official was aware of students bringing weapons to school, that "on going gang difficulty" occurred at the school, that the after-school gathering had any gang relation, or that the shooter "was known to have dangerous propensities and violent tendencies," the court found that the shooting was not foreseeable. *Id.* "[O]n the record before us, this is that rare case where it can be said 'as a matter of law Defendant could not have taken reasonable measures that probably would have prevented the attack.'" *Id.*, citing *Martinez v. Woodmar IV Condominiums Homeowners Assoc., Inc.*, 189 Ariz. 206, 941 P.2d 218, 224 (1997).

Here, the Government argues that the facts in the case at bar are on par with those of *Morris* and *Hill*. USA Motion (doc. 48) at 5–7. Specifically, the Government asserts that Roderick's behavior occurred on sudden impulse and was not foreseeable, thus the school and the Government are not liable. In contrast, White asserts that this case is distinguishable from *Morris*, because, in *Morris*, the teacher was present at the immediate scene and was supervising the students in his charge. "[I]n the instant case no teacher or class sponsor was in or on the float supervising the junior class ... The critical distinction is that there was no supervision of the junior class float, in direct violation of the school's own guidelines." Resp. to USA MSJ (doc. 57) at 13.

White asserts that a Minnesota case is more relevant in determining how this matter should be resolved. *Id.* at 14, *citing Verhel v. Independent School Dist. No. 709*, 359 N.W.2d 579 (Minn.1984). The *Verhel* case involved a van, carrying twelve high school cheerleaders, that was involved in a motor vehicle accident during a school-sponsored event. 359 N.W.2d at 583. The driver of the van was a seventeen year-old girl who had been driving for thirteen months. *Id.* at 584. On appeal by the school district, the Minnesota Supreme Court found that the school had a duty to provide proper supervision of the cheerleaders' activity, and had a duty to provide proper instruction to the sponsor it assigned to the squad. *Id.* at 589. In addition, the court opined that the driving behavior of the youthful driver was foreseeable, even though it was sudden, because such behavior of unsupervised students is to be expected. *Id.* at 590. Here, the Court finds White's reliance on *Verhel* to be misplaced.

Despite the fact that this Court is not required to follow the Minnesota Supreme Court's conclusions in *Verhel*, the analysis required here does not significantly resemble that which occurred in the Minnesota case. Specifically, the court in *Verhel* reviewed the lower court's determination that the defendant school owed a duty of care to the cheerleaders. *Id.* at 586. In the case at bar, the existence of a duty owed by the school is not disputed. Furthermore, the court's statement that the unsupervised student's behavior of failing to obey a stop sign "is to be expected and is precisely the harm to be guarded against by the exercise of the school district's supervision" is merely dicta. *Id.* at 590. Thus, the Court does not find *Verhel* to be instructive in regards to the instant case.

In addition, White asserts that the school breached its duty of reasonable care to Sherianna when a school employee directed her to sit on the roof of the truck and allowed her to remain on top of the cab during the parade. The Court finds no evidence in the record to corroborate the allegation that Sherianna was directed by a school official to sit on the roof of the truck. At a minimum, White fails to identify which school employee or "persons in charge" instructed Sherianna to do such act. However, the parties seem to dispute whether Sherianna rode on the roof of the truck during the parade or only climbed on the roof of the truck in the parking lot after the parade.

The Government asserts that none of the fourteen school employees that participated along the parade route, and that White deposed, indicated that they saw Sherianna riding on the roof of the truck during the parade. USA MSJ Reply (doc. 65) at 4. In addition, the Government notes that Nashana Johnson testified that it was her and Sherianna's joint decision to boost themselves onto the roof as they approached the parking lot. *Id.* at 4, n. 8, *citing* USASOF (doc. 49) at ¶ 10, Nashana Johnson Depo. at 16–17. In contrast, White cites the deposition testimony of Terry Descheny, who indicates that he saw Sherianna riding on the roof of the truck during the parade. PSOF (doc. 58) at ¶ 72.[6] Moreover, White submits to the Court a photograph of Sherianna seated on the roof of the subject truck and a photograph of the school football team's float, which had numerous students seated on the hood and roof of a truck. *Id.* at ¶¶ 72, 78.

It is undisputed that Roderick had a valid driver's license, parental permission to drive the subject truck, a "clean" driv-

ing record and no "reputation" for vehicular misconduct. Moreover, it is undisputed that the truck had been stopped and parked just prior to the incident, and that there were no prior student injuries before, during or after parades of similar school sponsored events. However, the parties do dispute whether Sherianna rode on the roof of the truck during the parade or climbed onto the roof while in the parking lot. Regardless, under either factual scenario, the Court believes that reasonable persons could differ as to whether Sherianna's fall from the truck was reasonably foreseeable. It is arguable that a fall from the roof of a stopped truck is as plausible and as dangerous as a fall from a truck that is in motion. Thus, a trier of fact may not find Roderick's actions to be the source of the school's alleged breach. Further, the Court believes that reasonable persons could differ as to whether the school's omission of not requiring Sherianna to get down off the roof or not providing enough supervision to allow it to be aware that she was on the roof, exposed Sherianna to a foreseeable and unreasonable risk of harm, resulting in a breach of its duty to her as a student.

School teachers and administrators have both a statutory and common law duty not to subject students within their charge to a foreseeable and unreasonable risk of harm through acts, omissions, or school policy. *Hill,* 952 P.2d at 756. The question of breach is ordinarily decided by the trier of fact, unless "there is no evidence of breach and, therefore, the defendant was not negligent." *Rudolph,* 898 P.2d at 1004. Where reasonable persons could not differ, the court properly takes the issue from the jury. *Hill,* 952 P.2d at 757. In the instant case, a genuine issue of material fact re-

---

**6.** White also cites the depositions of Melvin Arthur, Ernessa Begay, Vanessa Begay and Violet Edgewater, however the sections she cites from these depositions either do not directly support the claim or were not provided to the Court. PSOF (doc. 58) at ¶ 72.

mains in dispute. Moreover, the Court believes that reasonable persons could differ in their determinations of whether the school breached its duty to Sherianna. Consequently, the Court shall deny the Government's motion for summary judgment.

Therefore,

IT IS ORDERED that the Government's Motion to Strike (doc. 67) is DENIED.

IT IS FURTHER ORDERED that Descheny's Motion for Summary Judgment (doc. 45) is GRANTED.

IT IS FINALLY ORDERED that the Government's Motion for Summary Judgment (doc. 48) is DENIED.